[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 00-16340

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 02, 2001
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-02271-CV-AR-M

PHYLLIS COFIELD,

Plaintiff-Appellant,

versus

GOLDKIST, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(October 2, 2001)**

Before BIRCH, COX and ALARCON[*], Circuit Judges.

PER CURIAM:

_____

[*] Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Phyllis Cofield appeals the district court's order granting summary judgment in favor of Goldkist, Inc. on Cofield's claims under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.* We affirm.

*Background*

Cofield timely filed a discrimination charge against Goldkist with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Cofield a "right-to-sue" letter. Cofield then filed this suit against Goldkist, claiming that she was denied a promotion to Goldkist's Plant Superintendent position because of her age, in violation of the ADEA, and her gender, in violation of Title VII. Goldkist moved for summary judgment, and the court granted Goldkist summary judgment on both claims. The court concluded that Cofield failed to demonstrate that Goldkist's legitimate, nondiscriminatory reason for not promoting Cofield—Bowen's superior qualifications—was pretextual. Cofield appeals.

Since 1970, Goldkist has employed Cofield at its poultry processing facility in Boaz, Alabama. The Boaz facility is divided into two parts, the Fresh Processing Plant and the Further Processing Plant. The Fresh Processing Plant processes live chickens from the time they are received through shipping. The Further Processing Plant processes some chickens into nuggets, patties, and fingers for individual

2

customers. Cofield has experience working in both of these plants, but primarily in the Fresh Processing Plant.

The Fresh Processing Plant consists of two areas, Evisceration One and Evisceration Two. Until 1987, Cofield worked in Evisceration One, holding both hourly and managerial positions.[1] Since 1987, Cofield has been a Unit Manager II in Evisceration Two. In the managerial structure at Goldkist, Unit Managers report to Plant Superintendents, and Plant Superintendents report to the Plant Manager. Plant Superintendents assist the Plant Manager in coordinating the flow of production and in supervising Unit Managers.

Cofield sought a promotion to Plant Superintendent in September 1998.[2] Dewayne Bowen, a 33-year-old male, was awarded the position. Before accepting this position, Bowen had worked at Goldkist for eight years. He left Goldkist in May

---

[1] The production process in Evisceration One has become automated since Cofield left that division. The process now requires familiarity with machines that run the production line.

[2] Cofield also sought a promotion to the Plant Superintendent position in 1996. The 1996 position was awarded to Scott Seabrook. Seabrook previously served as a plant manager for two of Goldkist's competitors before Goldkist hired him. Seabrook joined Goldkist as a Unit Manager, the same position held by Cofield, and five months later he was promoted to the Plant Superintendent position. Cofield was recommended for this position by several of her superiors, including the human resources manager, Hugh Kincaid. Cofield was also interviewed for this position. Goldkist claims that Seabrook was hired because of the superior managerial experience he developed while employed with Goldkist's competitors.

Cofield originally alleged that Goldkist engaged in sex and age discrimination in connection with the promotion of Seabrook. The district court did not consider this allegation because Cofield did not oppose Goldkist's assertion that these claims were time-barred due to Cofield's failure to file a timely EEOC charge. Cofield does not challenge this ruling on appeal.

1998 to accept a management position with one of Goldkist's competitors, but returned to Goldkist in September 1998 to accept the Plant Superintendent position. Cofield was 47 years old when Bowen was hired. Lannie Stephens, the Division Manager at Goldkist's Boaz facility, made the decision to hire Bowen. Cofield claims that Goldkist engaged in sex and age discrimination by hiring Bowen.

During his employment with Goldkist, Bowen worked at Goldkist's poultry production facilities in Boaz, Alabama, and in Douglas, Georgia. Bowen worked at the Boaz facility in hourly and managerial positions. Bowen also served as the Division Quality Assurance Manager at the Douglas facility. This position is a higher-level management position than either the Unit Manager or the Plant Superintendent positions. According to Stephens, "[a]s Division Quality Assurance Manager for Gold Kist's [sic] Douglas, Georgia facility, Mr. Bowen worked at the same level as his Plant Manager, a level above the [Plant Superintendent] position awarded to him in 1998, and two levels above Ms. Cofield's Unit Manager II position." (R.2-19 at 2.)

Bowen resigned from Goldkist in May 1998, and was hired by Cagle's, Inc., a Goldkist competitor. Cagle's employed Bowen as a plant superintendent. Bowen and Cofield disagree as to whether Bowen's position at Cagle's was equivalent to a Plant Superintendent or a Unit Manager at Goldkist. It is undisputed, however, that

4

Bowen's position at Cagle's required him to supervise over 200 employees, and it conferred upon Bowen the authority to make independent decisions to interview, hire, promote, or fire employees. Goldkist rehired Bowen in September 1998, as a supervisor, and three days later he was promoted to the Plant Superintendent position.[3] By the time Bowen was rehired for the Plant Superintendent position, he had eight years of experience in the poultry processing business, most of which was managerial.

Throughout her lengthy employment with Goldkist, Cofield gained experience in the operations of the poultry production business. She also performed many of the job duties associated with the Plant Superintendent position. As Unit Manger II, Cofield supervised 110 to 115 employees, but she did not have the direct authority to interview, hire, promote, or terminate employees. Cofield received favorable evaluations from her supervisors, and several of her evaluations indicated that she could perform in a Plant Superintendent position.[4] She was disciplined only once, on September 10, 1997, for giving improper instructions to shipping personnel. This

---

[3] In her supplemental letter brief, filed at our request, Cofield argues that Bowen never applied for the Plant Superintendent position and that Bowen was never recommended for the position. Nevertheless, Kincaid states that, at the time Bowen was rehired in 1998 as a supervisor, Goldkist knew there would soon be an opening for the Plant Superintendent position. (R.1-13-Ex. 2 at 161.) He also states that there were discussions that Bowen would be a good candidate for that position. *Id.*

[4] Goldkist's employment evaluations rate employees on a scale of one through five. One indicates distinguished employment service, two indicates commendable, three indicates competent, four indicates fair, and five indicates marginal service. Cofield's evaluations from 1994 to 1996 rate her as a three-plus.

reprimand occurred during the interval between the opening of the Plant Superintendent positions in 1996 and in 1998.

Cofield was recommended for the Plant Superintendent position in 1998 by Roger White, the Plant Manager and her former supervisor. Kincaid, who had recommended Cofield for the 1996 Plant Superintendent position, did not recommend Cofield in 1998 because he believed that Bowen was a more qualified candidate.[5] Although Cofield was interviewed for the Plant Superintendent position in 1996, she was not interviewed for the position in 1998. Cofield claims that Goldkist maintained an internal policy to promote from within whenever current employees are qualified for the available position, and she believes that she was the most qualified employee. Goldkist, in its EEOC Position Statement, claims that it prefers to hire candidates from within, but that "the internal candidate is not always the best match for the particular position to be filled. In this referenced situation, Ms. Cofield's longer company tenure and individual skills did not necessarily make her the best available candidate." (R.3-10 at 3.)

Stephens claims that he hired Bowen instead of promoting Cofield because Bowen was more qualified for the Plant Superintendent position. Stephens testified

---

[5] According to Kincaid, "[a]t both times, I felt like she could perform the duties of the job. The first time I felt like she was the most qualified and the second time I did not." (R.1-13-Ex. 2 at 114-15.)

that "[b]ased on Bowen's prior experience as a division quality assurance manager and plant superintendent, he was considered more qualified than Ms. Cofield for the position . . . ." (R.2-19 at 3.) Stephens also stated that "Mr. Bowen was selected because he had worked in higher-level management positions than Ms. Cofield." *Id.* at 2.

## *Standard of Review*

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).

## *Discussion*

Cofield does not present direct evidence of age or sex discrimination by Goldkist. Instead, she relies on circumstantial evidence and invokes the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973).[6] Goldkist's motion for summary judgment does not challenge

---

[6] Cofield challenges the district court's memorandum opinion because it only addresses her ADEA claim. The district court, however, expressly granted summary judgment to Goldkist on Cofield's ADEA claim and on her Title VII claim because she failed to show pretext. Although the *McDonnell Douglas* framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 141-42, 120 S. Ct. 2097, 2105 (2000) (recognizing widespread application of *McDonnell Douglas* framework to ADEA claims); *Chapman*, 229 F.3d at 1024 (applying *McDonnell Douglas* framework to ADEA claim). Because the legal analysis is the same with respect to both of Cofield's claims, the district court did not need to analyze each claim separately.

Cofield's assertion that she has satisfied her initial burden of establishing a prima facie case of discrimination. Goldkist thus bears the burden of articulating a legitimate, nondiscriminatory reason for hiring Bowen rather than promoting Cofield. *See McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824. According to Goldkist, Bowen was hired because he was more qualified for the Plant Superintendent position than Cofield. This articulated reason casts the burden on Cofield to demonstrate that Goldkist's reason is pretextual. *See id.* at 804, 93 S. Ct. at 1825; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993). The only issue for us to determine, therefore, is whether Cofield has advanced sufficient evidence for a jury to find that Goldkist's articulated reason is pretextual.

The gravamen of Cofield's pretext argument is that she was more qualified for the Plant Superintendent position than Bowen.[7] Cofield cannot, however, establish pretext simply by showing that she is more qualified than Bowen. *See Lee v. GTE Fla., Inc.*, 226 F.3d 1229, 1253 (11th Cir. 2000). Rather, Cofield must adduce evidence that the disparity in qualifications is "so apparent as virtually to jump off the page and slap you in the face." *Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th

---

[7] Cofield also supports her pretext claim by arguing that Goldkist relied only on subjective factors in reaching a decision not to promote her. This argument lacks merit, however, in light of our recent en banc decision in *Chapman*. There, we emphasized that subjective reasons can constitute legally sufficient, nondiscriminatory reasons under the *McDonnell Douglas* framework. *Chapman*, 229 F.3d at 1033.

8

Cir. 2001); *Lee*, 226 F.3d at 1254; *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1340 (11th. Cir. 2000) (all quoting *Deines v. Texas Dep't of Protective & Regulatory Serv.*, 164 F.3d 277, 280 (5th Cir. 1999)). The relevant inquiry for us, then, is not to judge which employee was more qualified, but to determine whether any disparity between Bowen's and Cofield's managerial qualifications is so great that a reasonable fact-finder could infer that Goldkist did not believe Bowen to be better qualified.

Cofield points to her managerial experience as showing obvious superiority to Bowen, but the evidence is not that conclusive. Cofield had thirty years of experience with Goldkist, half of which was managerial. By contrast, Bowen served in a managerial capacity during most of his eight years at Goldkist and for the four months he worked at Cagle's. Cofield served as a Quality Control Manager in Evisceration One for one year. More recently, Bowen held this same position for over three years, and his experience in Evisceration One afforded him direct experience with the production process that became automated after Cofield began working in Evisceration Two.[8] Cofield has served as Unit Manager II in Evisceration Two since 1987. She has had supervisory control over 110 to 115 employees, but she has never had the direct authority to interview, hire, promote, or terminate employees. Bowen's

---

[8] Cofield claims that her experience in Evisceration Two as a Unit Manager II afforded her the experience required to be familiar with the newly automated production process of Evisceration One.

9

employment record, by comparison, reflects experience in higher level management positions than Cofield. He served as the Division Quality Assurance Manager at Goldkist's Douglas facility for over two years. This position is one step above the Plant Superintendent position and two steps above Cofield's position as Unit Manager II. Additionally, before he was rehired by Goldkist in 1998, Bowen served as a plant superintendent at Cagle's for four months. Cofield asserts that the plant superintendent position at Cagle's is more closely analogous to the Unit Manager II position she held at Goldkist. It is undisputed, however, that Bowen's position at Cagle's afforded him supervisory control over more than 200 employees and the authority to interview, hire, promote, or fire employees. On these facts, we do not agree with Cofield's assertion that there is an obvious disparity in qualifications. Cofield herself testified that Bowen was not unqualified for the Plant Superintendent position.[9]

Put simply, any disparity in qualifications that may exist here is so slight as to fail to establish that Goldkist's reason for not promoting Cofield was pretexual. We

---

[9] Cofield testified in her deposition that:

Q: Did you feel that Mr. Bowen was unqualified for the plant superintendent's position?

A: No, sir.

(R.1-13-Exh. 1 at 85.)

may safely assume that Cofield was qualified to be a Plant Superintendent at Goldkist. Cofield may even be justified in believing she was more qualified than Bowen for that position. But Cofield's qualifications are not so superior as to allow a reasonable fact-finder to conclude that Goldkist's reason for hiring Bowen was pretextual. We will not second guess Goldkist's decision to emphasize qualifications over length of service. *See Chapman*, 229 F.3d at 1030 ("[F]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)).

*Conclusion*

For the reasons discussed above, Cofield has not produced evidence sufficient for a reasonable fact-finder to conclude that Goldkist's legitimate, nondiscriminatory reason for not promoting her was pretextual. We affirm the district court's grant of summary judgment on Cofield's ADEA and Title VII claims.

AFFIRMED.

11