**Patricia ROGERS–LIBERT, Plaintiff,**

**v.**

**MIAMI–DADE COUNTY, Defendant.**

**No. 99–2886–CIV.**

United States District Court,
S.D. Florida,
Miami Division.

Dec. 18, 2001.

Roberta Fulton Fox, Miami, FL, for plaintiff.

William X. Candela, Dade County Attorney's Office, Miami, FL, for defendant.

## SUMMARY JUDGMENT ORDER

JORDAN, District Judge.

Patricia Rogers–Libert sues her former employer, Metropolitan Miami Dade County ("Miami–Dade"), for alleged gender and national origin discrimination (Counts I and II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and alleged age discrimination (Count III) under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Federal jurisdiction exists pursuant to 28 U.S.C. § 1331.

Ms. Rogers–Libert, a white female over the age of 40, alleges that she was discriminated against in connection with her non-promotion to the position of Manager of Management Services at the Miami–Dade Transit Agency. Ms. Rogers–Libert also

alleges that her supervisors at the Transit Agency retaliated against her after she complained about the discriminatory treatment, thereby creating a hostile work environment and ultimately resulting in her constructive discharge (Count IV). Miami–Dade moved for summary judgment on all of Ms. Rogers–Libert's claims, and on October 5, 2001, I granted that motion [D.E. 85]. The basis for that decision is set forth below.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hilburn v. Murata Elecs. North Am., Inc., 181 F.3d 1220, 1225 (11th Cir.1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to Ms. Rogers–Libert, the non-moving party, there is evidence on which the trier of fact could reasonably find a verdict in her favor. See Liberty Lobby, 477 U.S. at 251, 106 S.Ct. 2505; Hilburn, 181 F.3d at 1225; Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir.1997).

## II. UNDISPUTED RELEVANT FACTS [1]

Miami–Dade County is a political subdivision of the State of Florida. The Miami–Dade Transit Agency (MDTA) is a department of Miami–Dade County responsible for providing mass transit throughout Miami–Dade County.

Recruitment for vacant exempt positions is generally referred to as resume recruitment. In a resume recruitment, candidates submit resumes to the Miami–Dade County Employee Relations Department ("ERD"). The ERD then delivers the resumes of qualified candidates to the hiring department to ensure that they meet the minimum requirements for the position sought. The person designated as the department's hiring manager selects the type of selection method.

A hiring manager can select either the ranking or banding methods, or a combination of both methods. A strict ranking method requires the hiring manager to award the position to the highest scoring candidate. The banding method, on the other hand, allows the hiring manager to select an applicant from a predetermined band of candidates.

In 1989, Ms. Rogers–Libert's position at the Dade County Housing and Urban Development was eliminated and she was "bumped" to an AO3 position at MDTA. Her immediate supervisor at MDTA was Alex Rey Panama. Ms. Rogers–Libert served in this position until December of 1990. During this time, she never filed a complaint concerning Mr. Panama's conduct with MDTA's Fair Employment Practices division (FEP) or the County's Office of Fair Employment Practices (OFEP).

---

1. Under Local Rule 7.5, all material facts set forth in the statement served by the moving party will be deemed admitted unless controverted by the opposing party's statement. Unless otherwise noted, these facts include those set forth in Miami–Dade's statement of material facts, which are undisputed for purposes of this summary judgment motion as they have not been controverted by Ms. Rogers–Libert. Some facts not discussed here are analyzed in the discussion of Ms. Rogers–Libert's claims.

Ms. Rogers–Libert applied for a promotion to Manager of Budget and Grants in 1990. Mr. Panama was the hiring manager and selected Ms. Rogers–Libert for the position. She served in this position until her resignation in 1996.

In May of 1993, MDTA conducted a resume recruitment for Manager of Management Services. This position became vacant when Pam Levin was promoted to Chief of Management Services, replacing Mr. Panama, who was promoted to Assistant Director of Administration.

The interviews were originally scheduled to be held during the week of May 31, 1994, but on Tuesday, May 24, 1994, applicants were contacted and informed that the interviews had been rescheduled for the following afternoon, May 25, 1994.

Only two candidates, Ms. Rogers–Libert and Alberto Parjus (a Hispanic male under the age of 40), were interviewed by a four–member panel. Both applicants met the minimum qualifications for the position. The panel consisted of Ms. Levin ( a white female), Mr. Panama (a Hispanic male), Terence McKinley (the Special Assistant in Policy and Development Strategic Management and a white male), and Ruby Hemingway (Chief of Public Services and a black female). Initially, the interview panel did not include Ms. Hemingway, but after submitting her first panel selection, Ms. Levin was notified by the FEP that she would need to select an additional panel member in order to create racial balance. *See* Pamela Levin Deposition at 91 [D.E. 63]. Ms. Levin was also informed that there was currently an underutilization of white females, black females, and Hispanic females within the officials/administrators job category. *See* Eneldo Hernandez–Vidaillet Memorandum [D.E. 50, Exh. 4]. Ms. Levin was notified that "if an individual in one of the above underutilized groups is deemed qualified this may be one factor in hiring." *See id.* This reconstituted panel was approved by the FEP. As the hiring manager, Ms. Levin was the panel chairperson. During the structured interview, panel members asked Ms. Rogers–Libert a total of 10 questions and scored her responses. Mr. Parjus was asked the same questions, in the same order, and scored on his answers. The scores were as follows:

|              | Mr. Parjus | Ms. Rogers–Libert |
|--------------|------------|-------------------|
| Mr. McKinley | 85         | 85                |
| Ms. Hemingway| 74         | 86                |
| Mr. Panama   | 92         | 84                |
| Ms. Levin    | 83         | 77                |
|              | 334        | 332               |

The panel members sat at a table two to three feet away from the candidates during the interviews. Ms. Rogers–Libert testified that during her interview Mr. McKinley was "doodling ... Pam was writing things and Ruby was. I don't recall if Alex was writing anything." *See* Deposition of Patricia Rogers–Libert at 20 [D.E. 50, Exh. 1]. Ms. Rogers–Libert could not see what the panel members were writing.

According to the panel members, Ms. Rogers–Libert and Mr. Parjus were ranked solely on their answers to the interview questions, because they had already been approved by the ERD as minimally qualified for the promotion. The applicants' work history and their educational background did not factor into their interview scores. The panel members agree that nothing derogatory was said by a panel member about either of the applicants and agree that nothing unusual occurred that affected their impression of the candidates. The panel members also agree that nothing occurred to suggest that a candidate was "pre-selected," or favored by a panel member.

The panel members did not discuss their scoring of each candidate during the interviews or before the score sheets were tabulated. Additionally, the panel members

did not know the scores given to the candidates by the other members of the panel.

The score sheets were collected by Ms. Levin and taken to an adjoining conference room, where Ms. Levin and Mr. Panama tabulated the scores. Ms. Rogers–Libert did not witness the actual tabulation, and did not speak with any of the panel members except for Ms. Hemingway. A handwriting analysis conducted by Anthony McAloney on behalf of Ms. Rogers–Libert found that the score sheets of Ms. Levin and one other panelist had been manually erased and altered. *See* Report of Anthony R. McAloney at 2 [D.E. 50, Exh. 14]. Mr. MacAloney's report identified two score sheets that had erasures or had been altered—Ms. Levin's and panelist D's. *See id.* Panelist D's scores were written in pen. *See id.* Ms. Rogers–Libert does not know when any of the changes in Ms. Levin's or Mr. Panama's score sheets occurred.

On May 31, 1994, Ms. Rogers–Libert filed a verbal complaint with the FEP's administrator, Jomoya Mobotu, claiming that the recruitment process for the position of Manager of Management Services was not fair. She specifically alleged that there was insufficient notice given for the interview, that improper comments were made by Ms. Levin in front of the panel, and that certain employment criteria— which were untrue and prejudicial to Ms. Rogers–Libert—were improperly included in the selection process. *See* Rogers–Libert Deposition at 32. Mr. Mobotu's inquiry led him to express some concern that the interview was held with only 24 hours notice. *See* FEP Memorandum at 5 [D.E.50, Exh. 2]. He noted that the position had been vacant since February of that year, and while he acknowledged that his office could not, as a matter of policy, instruct hiring managers on how to proceed and set up interviews for prospective applicants, he found that such short notice could have appeared unreasonable. *See id.* Mr. Mobutu also found it disturbing that Ms. Levin included an explanation, in an initial selection memorandum she wrote after the interviews were concluded, which suggested that factors other than interview responses had been considered. *See id.* at 5, 6. His report noted that Ms. Levin indicated such language was included in error, and his office concurred with this, given that no other contradictory statements were available to challenge Ms. Levin's explanation. *See id.* Mr. Mobutu then recommended that the selection memorandum be rewritten so as to eliminate all erroneous references to employment criteria as a basis of the selection process. *See id.* at 8. Mr. Mobutu's report concluded that despite the concerns he raised about the interview process, it "was not inherently unfair to Ms. Rogers–Libert or to any other applicant." [2]

Beginning in June of 1994, Ms. Rogers–Libert reported to Mr. Parjus. Ms. Levin, who reported to Mr. Panama, was Mr. Parjus' supervisor. In March of 1995, Mr. Parjus issued Ms. Rogers–Libert a performance evaluation with an overall rating of "above satisfactory" for the period covering December of 1993 to December of 1994, and she was granted a merit increase of 4%.

On April 26, 1994, Ms. Rogers–Libert filed a charge of sex, age, and national origin discrimination with the Equal Employment Opportunity Commission (EEOC). On June 26, 1995, Ms. Rogers–Libert filed a retaliation complaint with the EEOC. On May 27, 1998, the EEOC issued a letter of determination as to both charges. The EEOC's investigation determined that the Transit Agency appeared to have tampered with the scoring process. *See* EEOC Letter of Determination at 1

2. The report was sent to MDTA Director Chester Colby.

[D.E. 50, Exh. 13]. The representatives of the EEOC conducted an on-site visit to review original documents but Miami–Dade did not produce the documents at the time. *See id.* Miami–Dade did not respond to a pre-subpoena letter requesting the production of those documents. *See id.*

In April of 1995, Ms. Rogers–Libert filed a retaliation claim with the EEOC charging that retaliatory acts had taken place at work since the time of her EEOC complaint. *See* Rogers–Libert Deposition at 64. These retaliatory acts allegedly included the withholding of important information from Ms. Rogers–Libert, the exclusion from meetings that she was required to attend in order to adequately perform her job, the failure to grant her administrative leave which other employees similarly situated were granted, Ms. Levin threatening to terminate her, telephone calls being made to her home and cellular phone when she was not at work, Ms. Levin and Mr. Panama disrupting the orderly work flow of projects that Ms. Rogers–Libert was responsible for and their taking other actions that interfered with her ability to perform her duties, not receiving a merit increase in December of 1995, and not receiving her evaluation because her supervisor, Mr. Parjus, did not want to have to ask for Ms. Levin's approval on a positive evaluation of Ms. Rogers–Libert. *See* Patricia Rogers–Libert Affidavit at 2 [D.E. 50, Exh. 12].

Ms. Rogers–Libert tendered her resignation in December of 1995. *See* Patricia Rogers–Libert Addendum to Plaintiff's Statement of Material Facts [D.E.50, Exh. 6]. In 1996, Ms. Rogers–Libert was elected to the City of Aventura Board of County Commissioners, and continues to serve in that capacity.

### III. THE TITLE VII CLAIMS IN COUNTS I AND II

Under Title VII of the Civil Rights Act of 1964 it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's ... sex or national origin." 42 U.S.C. § 2000e–2(a)(1). Counts I and II of Ms. Rogers–Libert's complaint seek redress for "sex based discrimination" and for "national origin-based discrimination." Ms. Rogers–Libert alleges that she did not receive the promotion to Manager of Management Services at the Transit Agency because she was the victim of impermissible sex and national origin discrimination. She also contends that her treatment became so intolerable that she was forced to leave her employment at the Transit Agency.

Ms. Rogers–Libert alleges that she was subjected to promotion discrimination in the interviewing process for the position of Manager of Management Services because of her sex and national origin, and that her non-promotion was the specific result of this discrimination. Ms. Rogers–Libert maintains that as part of their scheme to promote a Hispanic male under the age of 40, Mr. Panama and Ms. Levin limited the number of eligible candidates to be interviewed for the position, then tampered with the results of the interview scores so that the successful applicant would be male, Hispanic, and under the age of 40. Specifically, Ms. Rogers–Libert contends that rather than totaling the panelists' scores from the interviews in the panelists' presence, as Transit Agency policy required, the scores were totaled in another area away from the panelists and altered to make Mr. Parjus the successful candidate. *See* Plaintiffs' Statement of Contro-

verted Material Facts at 12 [D.E. 56]. To prove her claim of tampering, Ms. Rogers–Libert relies on her handwriting expert's report as evidence that Mr. Panama and Ms. Levin purposely altered the interview results to result in the selection of Mr. Parjus.

"To establish a prima facie case under Title VII for sex or national origin discrimination, a plaintiff must prove (1) that she is a member of a protected class, (2) that she was qualified and applied for the promotion, (3) that she was rejected despite these qualifications, and (4) that other equally or less qualified employees who are not members of the protected class were promoted." *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 1252 (11th Cir.2000) (citing *Taylor v. Runyon,* 175 F.3d 861, 866 (11th Cir.1999)). Miami–Dade has properly conceded, for purposes of summary judgment, that Ms. Rogers–Libert has established the first three elements of the prima facie case. *See* Memorandum of Law in Support of Miami–Dade's Motion for Summary Judgment at 9 [D.E.42]. For purposes of this summary judgment motion, I will also assume that the fourth element of Ms. Rogers–Libert's prima facie case has also been established.

Where an employee relies on circumstantial evidence to show discriminatory intent, courts generally adhere to the *McDonnell Douglas–Burdine* burden-shifting framework. *See Holifield v. Reno,* 115 F.3d at 1561–62 (11th Cir.1997). The circumstantial evidence presented must be sufficient to create an inference of discrimination. *See id.* at 1564. If an inference of discrimination is sufficient to establish a prima facie case, the burden shifts to the employer to rebut the inference by proffering a legitimate, non-discriminatory reason for the employment action. *See id.* This is an "exceedingly light" burden. *See id.* (quoting *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1061

(11th Cir.1994)). If the employer proffers some legitimate, non-discriminatory reason for the promotion decision, the plaintiff must then show that this reason is merely pretextual. *See Taylor,* 175 F.3d at 866.

■ Miami–Dade has proffered a non-discriminatory and legitimate reason for Ms. Rogers–Libert's non-promotion—that the interview scores resulted in a higher score for Mr. Parjus, and that based on the ranking system, he was the successful candidate. Ms. Rogers–Libert argues that she was far more qualified than Mr. Parjus, and that the reason given for Mr. Parjus' promotion by Miami–Dade is merely pretextual. *See* Patricia Rogers–Libert's Response to Miami–Dade's Filing of Supplemental Authority at 1 [D.E. 69]. Ms. Rogers–Libert cannot however, show pretext merely by proving that she was better qualified for the position than Mr. Parjus. *See Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1268 (11th Cir.2001) (holding that disparities in qualifications must be so great that a reasonable fact finder could infer that employer was acting in a discriminatory manner). Disparities in qualifications alone will not, in and of themselves, be enough to demonstrate discriminatory intent unless "those disparities are so apparent as virtually to jump off the page and slap you in the face." *See Deines v. Texas Dept. of Protective and Regulatory Servs.,* 164 F.3d 277, 280 (5th Cir.1999). In *Deines,* the Fifth Circuit explained that this standard "should be understood to mean that disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *See id.* at 280–281. In other words, a plaintiff must do more than question the wisdom of the employer's reasons, where those reasons might motivate a reasonable employ-

er. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997). The issue is not which employee was more qualified, but whether there was such a disparity between Ms. Rogers–Libert's and Mr. Parjus' qualifications that no reasonable fact-finder could believe that Mr. Parjus' score would have or could have been higher than that of Ms. Rogers–Libert. *See Cofield,* 267 F.3d at 1268.

■ Ms. Rogers–Libert did, in fact, have two more years of experience at the Transit Agency than Mr. Parjus. *See* Resumes of Patricia Rogers–Libert and Alberto Parjus [D.E. 50, Exh. 14, Exh. 3(c) ]. She also had worked for Miami–Dade County longer · than Mr. Parjus. *See id.* As Budget and Grants Manager, her budget responsibility was over a $250,000,000 budget, while Mr. Parjus, as the Special Projects Administrator, was responsible for a $20,000,000 budget. *See id.* On the other hand, both candidates had bachelor's degrees—Mr. Parjus received his degree in business administration and Ms. Rogers–Libert received hers in psychology. *See id.* Mr. Parjus had attended some Transit Agency training programs and other transportation-related training, while Ms. Rogers–Libert had been associated with several community organizations and served as a board member for some of them. *See id.* Prior to working for the Transit Agency, Ms. Rogers–Libert had supervisory roles at the Dade County Department of Housing and Urban Development, while Mr. Parjus had been a personnel specialist for the Dade County Corrections and Rehabilitation Department with supervisory responsibility. *See id.* In light of their backgrounds and employment histories, the disparities between the qualifications of Ms. Rogers–Libert and Mr. Parjus are not, in and of themselves, enough to permit a reasonable trier of fact to find pretext. *See Cofield,* 267 F.3d at 1268 (finding that any disparity in qualifications between candidate with 15 years of managerial experience and candidate with 8 years of managerial experience so slight as to fail to establish reason for non-promotion was pretextual).

Ms. Rogers–Libert must therefore present sufficient direct or circumstantial evidence of pretext to get to a jury. *See Holifield,* 115 F.3d at 1561; *Carter v. City of Miami,* 870 F.2d 578 (11th Cir.1989). "[D]irect evidence is 'composed of only the most blatant remarks, where intent could be nothing other than to discriminate' on the basis of some impermissible factor." *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999) (quoting *Carter,* 870 F.2d at 582). The panel members here have testified that each candidate was ranked solely on the answers to the interview questions and that nothing was said by any panel member regarding the age, sex, or race of either candidate. *See* Ruby Hemingway Adams Affidavit at 1, 2 [D.E. 50, Exh. 5]; Terence McKinley Affidavit at 2 [D.E. 50, Exh. 5]; Alex Rey Panama affidavit at 2, 3 [D.E. 50, Exh. 11]; Levin Deposition at 161. Ms. Rogers–Libert has offered nothing to show that any comments were ever made regarding sex or national origin. As there is no direct evidence of discrimination, Ms. Rogers–Libert relies on circumstantial evidence to establish pretext and prove her claim of discrimination.

Ms. Rogers–Libert points to testimony from her handwriting expert that two scoring sheets had erasure marks, indicating that scores had been changed or altered. But as Ms. Rogers–Libert's counsel acknowledged at the hearing on the summary judgment motion, the expert did not conclude in his report that anyone in particular altered the scores and did not render any opinion as to when the alterations were made. He only concluded that there were some erasure marks on two of the score sheets and that some of the numbers

had been altered. *See* McAloney Report at 2. Miami–Dade County has not disputed this fact, but rather offered a non-discriminatory, legitimate explanation for the erasure marks—that panel members changed their minds on a particular score for a particular question during the interviews. Although there is nothing in Ms. Hemingway Adams' or Mr. McKinley's affidavits indicating that they changed their scores, there is testimony that they reviewed the score sheets and that they accurately reflect their assessments of the candidates. *See* Hemingway Adams Affidavit at 2; McKinley Affidavit at 2. Mr. Panama acknowledged that, using a pen, he traced over his scores during the interview process, as was his practice, and declared that he made no changes to his or anyone else's score sheets after the interviews were concluded. *See* Panama Declaration at 2, 3. He also stated unequivocally that he made no changes to his initial scores on his score sheets. *See id.* Ms. Levin acknowledged that she might have changed her mind and erased some of her scores during the interview process, but denied that she did so after the interviews were concluded or that she changed anyone else's scores. *See* Levin deposition at 117, 118.

In sum, though Ms. Rogers–Libert argues that the scores were changed after the interviews were finished, out of view of the panelists, she points to nothing in the record evidence to support this supposition, aside from the fact that she believes she must have scored higher than her competition given her superior experience. The analysis of pretext, however, must be focused on the employer's beliefs, and not the employee's own perceptions of her performance. *See Holifield,* 115 F.3d at 1565. Thus, where the employer has acted based on a belief that the performance of one candidate was superior to the performance of the other, an employee's assertions of his own superior performance is insufficient to defeat summary judgment in the absence of other evidence. *See id.* Here, Miami–Dade has produced evidence to rebut any inference of discrimination by submitting the affidavits of the panelists involved in the scoring process, and through the testimony of Ms. Levin. Ms. Rogers–Libert has not presented sufficient evidence that Miami–Dade County's proffered reason either for the promotion of Mr. Parjus or for the changes in the scoring sheets was more likely motivated by discrimination based on her sex or national origin. Her assertions that Ms. Levin changed the scoring sheets after the completion of the interview process are unsubstantiated. Thus, summary judgment on the sex and national origin discrimination claims is appropriate.

## IV. THE ADEA CLAIMS IN COUNT III

Ms. Rogers–Libert also contends that the decision to promote Mr. Parjus was based on a discriminatory scheme to promote people under the age of 40, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* She further contends that the decision to use a pure "ranking" system to select the employee to be promoted was, in itself, discriminatory because it eliminated consideration of the candidate's years of experience and thereby skewed the selection away from an older employee, also violating the ADEA.

Under the ADEA, it is "unlawful for an employer...to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). When a plaintiff alleges that an employer discriminated on the basis of age, liability depends on whether the employer's decision was actually motivated by age. *See Reeves v. Sanderson,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105

(2000). In *Sanderson,* the Supreme Court determined that the *McDonnell Douglas* burden-shifting framework could apply to a claim brought under the ADEA. *See id. See also Cofield,* 267 F.3d at 1267 (using burden shifting analysis of *McDonnell Douglas* framework for age and sex discrimination claim); *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (applying *McDonnell Douglas* framework to ADEA claim). Thus, once a plaintiff establishes her prima facie case, the burden of proof shifts to the employer to demonstrate that the plaintiff was rejected for a legitimate, non-discriminatory reason. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *See Sanderson,* 530 U.S. at 142, 120 S.Ct. 2097. Once the employer meets this intermediate burden, the plaintiff has the ultimate burden to show "that the employer's proffered explanation is unworthy of credence." *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Ms. Rogers–Libert has established her prima facie case by showing that (1) at the time of the application for promotion she was a member of the class protected by the ADEA; (2) she was otherwise qualified for the position; (3) she was not promoted; and (4) the person promoted was in his thirties. *See Sanderson,* 530 U.S. at 142, 120 S.Ct. 2097. Miami–Dade County has met its intermediate burden of presenting a legitimate, non-discriminatory reason for the decision to promote Mr. Parjus instead of Ms. Rogers–Libert—that Mr. Parjus achieved a higher score in the interview process and was selected under a ranking system.

■ Ms. Rogers–Libert has not offered any evidence to show that this explanation was merely pretext for a decision based on age discrimination. While she suggests that Ms. Levin altered the scores after the completion of interviews, there is nothing in the record to substantiate this claim. Ms. Rogers–Libert's expert report establishes that scores were erased and changed, but not that this was done outside of the room the interviews took place in, and not that this was done by any particular person or for any illegitimate reason. *See* McAloney Report at 2. The panelists have stated that no one discussed the candidates' age, and that their scores accurately reflected their assessment of the candidates. *See* Hemingway Adams Affidavit at 1,2; McKinley Affidavit at 2; Panama Affidavit at 2, 3; Levin Deposition at 161.

The only other evidence Ms. Rogers–Libert offers is that Mr. Panama had made comments in the past that "he preferred working with younger people because they had more energy," and that another employee "must be getting senile because he was getting up in years," and that he made remarks about division directors needing to retire because they were not up to the job. *See* Rogers–Libert deposition at 46, 48, 52. These comments (which Mr. Panama denies ever making) were made sometime after Ms. Rogers–Libert became manager of Budgets and Grants in 1992. *See id.* at 49. While these comments do not rise to the level of direct evidence because they were not made in relation to the decision-making process, they may constitute circumstantial evidence. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1331 (11th Cir.1998) (if decision maker's discriminatory statement is unrelated to employment decision at issue, the statement does not constitute direct evidence of discrimination, but may constitute circumstantial evidence). Ms. Rogers–Libert's testimony, however, is that she never told Mr. Panama her age at the time of her application for promotion to Manager of Management Services, and that Mr. Panama never inquired about her age. Moreover, there was nothing on either

candidate's resume to indicate age, nor anything in the application packet that indicated the candidate's age. While it is possible that some or all of the panelists knew the applicants' ages, because birthdays were celebrated throughout the years Mr. Parjus and Ms. Rogers–Libert were employed at the Transit Agency, there is no evidence to suggest that the panelists considered age in their assessments, or that Mr. Panama's comments were related in any way to the decision to promote Mr. Parjus. Additionally, Mr. Panama's affidavit states that he did not know the age of either Ms. Rogers–Libert or of Mr. Parjus when the interviews were conducted. *See* Panama Affidavit at 3. The panelists scored the candidates based on answers to questions posed during interviews and each has submitted an affidavit stating that they were not influenced by any comments made by anyone about the candidates, nor did any of them discuss their scores with other panelists. *See* Hemingway Adams Affidavit at 2; McKinley Affidavit at 2; Panama Affidavit at 3; Levin Deposition at 161. Additionally, none of the panelists commented on either applicant's age, race, or sex, and the panelists reviewed their score sheets and testified that the scores accurately reflected their assessments of the candidates. The panelists also said that no one attempted to influence their assessment of the candidates.

Ms. Rogers–Libert suggests that the ranking system for choosing the successful candidate itself was discriminatory, but she offers nothing to show that this is in fact the case. In fact, Ms. Rogers–Libert herself received an earlier promotion based on the same scoring and ranking system. *See* Rogers–Libert Deposition at

43. Miami–Dade County personnel training materials, while not recommending a strict interview/ranking system, permitted it to be utilized in choosing candidates for positions. *See* Plaintiffs' Notice of Filing Structured Interview and Selection Techniques Manual at 54 [D.E. 66]. There is nothing in the ADEA that requires an employer to consider experience in its hiring and promotion decisions, nor is there anything in the record that shows evidence of the ranking system having a discriminatory effect in its application. *See Chapman*, 229 F.3d at 1030 ("'[F]ederal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'") (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)). There is no inference from the record evidence that Ms. Rogers–Libert was the victim of age discrimination to create a material issue of fact. Therefore, summary judgment for Miami–Dade on the age discrimination claim is appropriate.

## V. THE RETALIATION AND CONSTRUCTIVE DISCHARGE CLAIM IN COUNT IV

■ In Count IV of her complaint, Ms. Rogers–Libert claims that she was retaliated against because she complained about the alleged discrimination in violation of Title VII and the ADEA, which ultimately resulted in her constructive discharge. *See* Amended Complaint ¶ 39 [D.E. 29]. Under Title VII, an employer may not discriminate against an employee because the employee opposes any practice by the employer made unlawful by Title VII. *See* 42 U.S.C.A. § 2000e–3(a). The principles of law developed for Title VII cases are applicable to ADEA cases. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1530 n. 4 (11th Cir.1997).[3] Thus, to show that

---

**3.** Although the Eleventh Circuit has not squarely addressed the issue of whether claims for a hostile work environment based on age discrimination under the ADEA are

actionable, several other courts have recognized such claims. *See Crawford v. Medina General Hosp.*, 96 F.3d 830, 834 (6th Cir.

she was retaliated against for her gender, national origin, and age discrimination complaints, Ms. Rogers–Libert must show that (1) she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *See Holifield*, 115 F.3d at 1566.

■ Opposing an unlawful employment practice or participating in any way in an investigation, proceeding or hearing regarding a discrimination claim constitutes engaging in statutorily protected expression. *See Clover v. Total System Servs., Inc.* 176 F.3d 1346, 1351 (11th Cir.1999). The Eleventh Circuit has held that, "[a]t a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). Although there is no bright-line test for what constitutes an adverse employment action, it is clear that not all conduct by an employer negatively affecting an employee constitutes adverse employment action. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir.2001). In order for an employee to prove an adverse employment action under Title VII, she must show "a serious and material change in the terms, conditions, or privileges of employment." *See id.* at 1239. Moreover, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* Here, Ms. Rogers–Li-

bert did engage in statutorily protected expression but has not shown that her employers were actually aware of this fact. Even assuming, arguendo, that this awareness existed, Ms. Rogers–Libert has not shown an adverse employment action.

■ Ms. Rogers–Libert contends that she endured three types of discriminatory retaliation all of which constituted adverse employment action. *See* Patricia Rogers–Libert Memorandum in Opposition to Summary Judgment Motion at 10 [D.E. 49]. First, information necessary to her ability to do her job was withheld from her by her supervisor, Ms. Levin. *See id.* Second, she was excluded from meetings she needed to attend in order to do her job, affecting both her job performance and her professional reputation. *See id.* at 10, 11. Third, she failed to get the last merit raise due to her. *See id.* at 11.

It is undisputed that Ms. Rogers–Libert did not suffer a loss in salary or benefits, subsequent denial of promotions, workplace reassignment, transfer or change in her permanent job title as a result of her discrimination claims being filed. Furthermore, at the summary judgment hearing, Ms. Rogers–Libert's counsel agreed that the practice and pattern of Miami-Dade County throughout Ms. Rogers–Libert's employment was that merit raises were implemented several months after employees became eligible for them in December. Ms. Rogers–Libert left the Transit Agency in January, so it is highly unlikely that retaliation would be the reason for her not receiving her merit raise, as she did not stay for the usual period in which the merit raise was paid. Ms. Rog-

1996); *Tumolo v. Triangle Pacific Corp.*, 46 F.Supp.2d 410, 412 (E.D.Pa.1999); *Vannoy v. OCSEA Local 11*, 36 F.Supp.2d 1018, 1024 (S.D.Ohio 1999); *Valdivia v. University of Kansas Med. Center*, 24 F.Supp.2d 1177, 1178 (D.Kan.1998). Here, Ms. Rogers–Libert has

Title VII claims and ADEA claims, so assuming that her ADEA retaliation claim is also actionable, I apply the standards of Title VII. *See Madiedo v. Miami–Dade County*, 2000 WL 1763845, *5 (S.D.Fla. June 1, 2000).

ers–Libert's counsel conceded as much at the summary judgment hearing. The fact that Ms. Rogers–Libert did not receive information she felt was necessary to do her job must be considered in light of the fact that she never received a negative performance review at any time during her employment at the Transit Agency. The same is true for the fact that she was excluded from meetings. Ms. Rogers–Libert's allegations, considered in the light most favorable to her, are not sufficient to support her retaliation claim. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1449 (11th Cir.1998) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)).

Because Ms. Rogers–Libert has failed to show the requisite causal connection between her protected activity and the allegedly adverse employment actions complained of, summary judgment is also appropriate on this ground. The evidence is insufficient for any reasonable jury to find that either Ms. Rogers–Libert's employers were aware of her protected activity, or if aware, took any adverse employment actions in retaliation for such protected activity.

 Likewise, Ms. Rogers–Libert's constructive discharge claims cannot survive summary judgment. In order to prove a constructive discharge, a plaintiff must show that she "involuntarily resign[ed] in order to escape intolerable and illegal employment requirements to which he or she is subjected because of race, color, religion, sex, or national origin," and that "working conditions were so intolerable that a reasonable person in [his] position would be compelled to resign." *Morgan v. Ford*, 6 F.3d 750, 755–56 (11th Cir.1993) (internal quotation marks and citations omitted). In a recent ADEA case, the Eleventh Circuit noted that "[t]he

standard for proving constructive discharge is higher than the standard for proving a hostile work environment." *Hipp v. Liberty National Life Insurance Co.*, 252 F.3d 1208, 1231 (11th Cir.2001). A plaintiff's objective feelings are irrelevant, and the operative inquiry is framed from an objective viewpoint—that of the reasonable person. *See id.* In order to establish a constructive discharge, therefore, a plaintiff must show that her working conditions were so intolerable that she was forced into an involuntary resignation. *See Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1450 (11th Cir.1998).

Ms. Rogers–Libert argues that she was constructively discharged because (1) she was not granted all the administrative leave she deserved, (2) she was telephoned repeatedly when away from her office, (3) she was interrupted during working meetings for non-urgent matters and matters that had already been completed, and (4) irrational deadlines were placed upon her causing her stress. *See* Amended Complaint ¶¶ 11, 12. Ms. Rogers–Libert's claims, considered in the light most favorable to her, are not pervasive or serious enough to support a constructive discharge claim. Ms. Rogers–Libert continued to do the same work at the same location for the same salary, and received annual pay raises and above-satisfactory performance reviews. Ms. Rogers–Libert obviously concluded that the reason she was being treated the way she was must have been based on her discrimination complaints. But Ms. Rogers–Libert's subjective belief—however sincere—is not sufficient to convert the Transit Agency's actions into a constructive discharge. *See Graham v. State Farm Mutual Insurance Co.*, 193 F.3d 1274, 1284 (11th Cir.1999) ("Plaintiff's subjective feelings about [the defendant's] actions, whatever they may have been, are not determinative."). There is simply no

indication that a reasonable person would have perceived the work environment so intolerable that they would have felt forced to leave. Indeed, in a resignation memo dated December 22, 1995, Ms. Rogers–Libert wrote the following to Danny Alvarez, the Deputy Director of the Transit Agency:

> We have briefly discussed my intent to resign from County Service, in order to advance professionally and to pursue other interests. At the request of my supervisor, Alberto Parjus, I agreed to postpone my resignation effective date to accommodate his vacation. This is to advise you that I have now submitted my resignation; my last day will be January 5, 1995.
>
> I would like to meet with you before January 5, to share some of my thoughts upon leaving.
>
> I have enjoyed working with you and appreciate your continuing encouragement and support.

See Plaintiffs' Addendum to Plaintiffs' Statement of Material Facts at Tab 6. This language does not seem "like the language of someone who feels his working conditions are so intolerable that he has no choice but to resign." *See Hipp,* 252 F.3d at 1241.

■ Finally, to the extent that Ms. Rogers–Libert has made a claim for a hostile work environment, that claim too must fail. To prevail on a hostile environment claim, a plaintiff must show that her supervisors significantly altered the conditions of her workplace, creating an objectively abusive and hostile atmosphere. *See Mendoza v. Borden,* 195 F.3d 1238, 1245–47 (11th Cir.1999) *(en banc ); Edwards v. Wallace Community College,* 49 F.3d 1517, 1521 (11th Cir.1995). For the reasons stated above, Ms. Rogers–Libert's conditions of work were not altered in such a way as to meet the standard for a prima facie case of hostile work environment. Thus, summary judgment is appropriate.

## VI. Conclusion

In sum, Miami–Dade's motion for summary judgment [D.E. 42] with respect to Ms. Rogers–Libert's gender, national origin, and age discrimination claims in Count I, II, and III of the complaint is Granted. The motion for summary judgment on Ms. Rogers–Libert's claims for retaliation in Count IV is also Granted. A final judgment will issue by separate order.