[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 11, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12239
Non-Argument Calendar

_____

D. C. Docket No. 05-02458-CV-RDP

CATHERINE ARMBRESTER,

Plaintiff-Appellant,

versus

TALLADEGA CITY BOARD OF EDUCATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 11, 2009)

Before EDMONDSON, Chief Judge, WILSON and FAY, Circuit Judges.

PER CURIAM:

Catherine Armbrester appeals the district court order granting summary judgment to the Talladega City Board of Education (Board) on her claims under 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. We affirm the judgment.

Armbrester is a black female over the age of 40 who drives a school bus for the Board. Drivers must inspect the engine of their bus before each departure; they must unlock and lift the hood of the bus to do so. Although the hood is not heavy, it takes some strength to release the lock that keeps the hood in place.

Armbrester hurt her neck in 2004. She gave a supervisor a note from her doctor that instructed her to avoid physical activity that required her to push or to pull heavy objects, such as unlocking and lifting the hood of her bus. For a few weeks, the supervisor helped Armbrester with the hood of her bus so she could complete her pre-departure inspection. But the supervisor stopped helping Armbrester after the Board concluded that the assistance created a safety hazard.[1] Unable to unlock and to lift the hood of her bus alone, Armbrester took paid sick

[1]The Board says that drivers who cannot complete the pre-departure inspection without help are likely incapable of pulling or lifting a student to safety in an emergency.

2

leave until her doctor released her to resume the physical responsibilities of her job. While on leave, Armbrester filed a claim with the EEOC in which she complained of race, age, and disability discrimination and retaliation.

Armbrester struggled upon her return from sick leave. She received a reprimand from a supervisor for driving her bus at a "high rate of speed" through a school parking lot. Later, another supervisor recommended that Armbrester serve a five-day, unpaid suspension based on reports that she continued to engage in unsafe driving practices and committed other violations of Board procedure.[2] Then, a parent complained about Armbrester's unsafe driving practices, inability to drop students off at school on time, and failure to pick up certain students on her route.

The Board terminated Armbrester's employment. She challenged the decision and was placed on leave pending the outcome of her appeal. Several months later, an arbitrator reversed the termination; although Armbrester had violated many Board policies, the arbitrator concluded that a more appropriate punishment was a twenty-day, unpaid suspension.

While awaiting the arbitrator's ruling, Armbrester filed two additional claims with the EEOC in which she complained that the Board retaliated against

--------

[2]The Board denied the suspension recommendation.

her for filing her initial EEOC claim. She then sued the Board to obtain permanent relief "from the unlawful discriminatory and retaliatory practices involving the terms and conditions of her employment." The district court granted the Board summary judgment. Armbrester appeals.[3]

Because we see no direct evidence of discrimination or retaliation, we apply the traditional burden-shifting framework.[4] Under that framework, Armbrester must first establish a prima facie case of discrimination and retaliation. See McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817, 1824 (1973). The burden then shifts to the Board to articulate legitimate reasons for its purportedly unlawful acts. See id. Finally, the burden returns to Armbrester to prove that those reasons are pretextual.[5] See id. at 1825.

---

[3]Armbrester contests only the resolution of her race and age claims; she presents no argument on her disability claims and, therefore, has abandoned them. United States v. Cunningham, 161 F.3d 1343, 1344 (11th Cir. 1998).

[4]This framework applies equally to discrimination claims under Title VII, the ADEA, and sections 1981 and 1983, see Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 n.6 (11th Cir. 2001); Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 843 n.11 (11th Cir. 2000), and retaliation claims under Title VII, the ADEA, and section 1981, see Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993).

[5]We review de novo an order granting summary judgment and view "the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmoving party." Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006).

Armbrester identifies three principal unlawful acts.[6]  She first notes the refusal of the Board to accommodate her neck injury: declining to assign someone to help her complete the pre-departure inspection of her bus.  She next cites the unsuccessful recommendation of her supervisor that she serve a five-day, unpaid suspension.  She last points to the failed attempt to terminate her employment.

The Board says it had legitimate reasons for each act.  First, it asserts that a driver must be able to lift the hood of her bus as a matter of safety; drivers unable to do so can neither complete the pre-departure inspection nor help a student in an emergency.  Second, the Board contends that Armbrester received a suspension recommendation after her supervisor learned that she engaged in unsafe driving practices, harassed her co-workers, and failed to pick up students stranded on the side of the road when their bus broke down.  Third, the Board claims that it terminated Armbrester's employment because she continued to engage in unsafe driving practices, refused to follow the directions of her superiors, jeopardized the safety of her students, and failed to pick up some students on her bus route.

Even if we assume that Armbrester has established a prima facie case of discrimination and retaliation, she offers virtually nothing to rebut the Board's

[6]Armbrester identifies other supposedly discriminatory and retaliatory acts, but we reject them as not actionable, see Davis v. Town of Lake Park, 245 F.3d 1232, 1238–39 (11th Cir. 2001), as waived, see Formby v. Farmers & Merchs. Bank, 904 F.2d 627, 634 (11th Cir. 1990), or both.

5

legitimate reasons for its acts. Insufficient evidence of pretext exists to survive summary judgment. <u>Mayfield v. Patterson Pump Co.</u>, 101 F.3d 1371, 1376–77 (11th Cir. 1996).

 AFFIRMED.