Carlos DORREGO, Plaintiff,

v.

**PUBLIC HEALTH TRUST OF MIAMI DADE COUNTY, d/b/a JMH Health Plan, et al., Defendants.**

No. 02–CV–23579.

United States District Court, S.D. Florida.

Oct. 24, 2003.

Christopher Charles Sharp, Fort Lauderdale, FL, for plaintiff.

Lee Alan Kraftchick, Dade County Attorney's Office, Miami, FL, for defendants.

### ORDER ON DEFENDANT'S, PUBLIC HEALTH TRUST, MOTION FOR SUMMARY JUDGMENT

HUCK, District Judge.

THIS MATTER is before the Court upon Defendant's, Public Health Trust of Miami–Dade County ("PHT"), Motion for Summary Judgment [DE# 25], filed August 29, 2003. Plaintiff, Carlos Dorrego, a Hispanic male, brings this action against Defendant PHT, his current employer, alleging violations of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), for failing to promote him because of his national origin.[1] Oral argument was held on Defendant PHT's

---

1. Counts II and III of Plaintiff's First Amended Complaint seek relief pursuant to 42 U.S.C. § 1983. Count II is an action against Defendant PHT. Count III is an action against Defendant Joseph Rogers. On September 24, 2003, the parties filed a Stipulation for Voluntary Dismissal With Prejudice of Counts II and III of First Amended Complaint [DE # 33]. Therefore, this Court will not address Defendant Rogers' Motion for Summary Judgment [DE # 23], filed on August 29, 2003, in the instant Order.

Motion on October 10, 2003. The Court has reviewed the Defendant's Motion for Summary Judgment, Reply, Local Rule 7.5 Statement of Facts, Plaintiff's Amended Response to Defendant's Statement of Material Facts, and supplemental memoranda, and is otherwise duly advised in the premises. For the reasons set forth below, Defendant's Motion for Summary Judgment will be GRANTED.

## I. *STATEMENT OF FACTS*

The Plaintiff, Carlos Dorrego, is currently employed by Defendant PHT, which does business as the Jackson Memorial Hospital ("JMH") Health Plan. The Plaintiff is of Hispanic ancestry. Defendant PHT hired the Plaintiff on October 23, 1995 as a temporary Health Maintenance Organization Marketing Representative for the JMH Health Plan. The Plaintiff's job involved the marketing of the JMH Health Plan, primarily to Medicaid recipients. Defendant Joseph Rogers, a White male, is the Executive Director of the JMH Health Plan.

### A. The Commercial Account Executive Position

In 2000, Defendant PHT's Human Resources Department approved the creation of a "Commercial Account Executive" ("CAE") position. Defendant Rogers had substantial input in creating the written job description for the CAE position.

Specifically, the job description for the CAE position was created on Defendant Rogers' computer. In order to create the job description, Defendant Rogers provided the Human Resources Department with information regarding recently modified Florida insurance regulations which would affect the scope of the new CAE position. Defendant Rogers also ensured that the job description delineated the different types of responsibilities that would be required for a new sales and Medicaid-related position. To accomplish this task, Defendant Rogers modified previous job descriptions for marketing representatives to reflect the new insurance regulations.

The position description for the CAE position contains twenty-three (23) major tasks and duties. Of these, seventeen (17) of the listed tasks and duties are identical to those listed in the position description for a marketing representative. The Plaintiff held the position of marketing representative in the marketing department for over seven years prior to April 2002, when the CAE position was filled.

When the CAE position was created, the Defendants' intent was to create a new job for each of the employees of the marketing department. Once the positions were approved and posted by the Human Resources Department, any applications submitted would be forwarded to Defendant Rogers for the selection of candidates to be interviewed. Defendant Rogers understood that all of the existing marketing employees would apply for the new CAE position.

The posting for the CAE position, dated November 21, 2001, states that a high school degree is required for the position. In addition, the posting states that "college level coursework in accounting, economics, business law or [a] related field [is] preferred." In addition to considerable knowledge of and/or experience in the managed care field and applicable regulations, applicants for the CAE position were expected to have excellent communication and organizational skills.

Although Defendant Rogers did not have the sole authority to create the CAE position, once the position was created and posted by the Human Resources Department, Defendant Rogers had the sole and final authority to make the ultimate selection for the position.

Although some applications were received from individuals not employed by Defendant PHT, only five applicants who were employees of Defendant PHT were interviewed for the CAE position. The applicants selected for interview were the Plaintiff, Vanessa Reeves, Roberto Maduro, Wessel Peters and Glendon Walker.

Defendant Rogers interviewed all five candidates within a period spanning no more than two weeks. Each interview lasted approximately one hour. The Plaintiff, like the other applicants selected for interview, was interviewed by Defendant Rogers only.

During the interviews, Defendant Rogers had in hand a list of questions to be asked of each applicant, each applicant's "Employee Transfer Form" summarizing his or her work experience and education, and the applicant's resume if such was provided by the applicant prior to the interview. Defendant Rogers also considered the written job description for the CAE position, and may have reviewed each applicant's personnel file. Defendant Rogers felt that he had a great deal of familiarity with the candidates based on his experience in working with each of them for several years.

On the Plaintiff's "Employee Transfer Form," which is dated December 4, 2001, the Plaintiff listed the following qualifications and experience for the CAE position: (1) graduation from high school in 1984; (2) a bachelor of arts degree in accounting from Florida Atlantic University in 1992; (3) more than three years of experience as assistant controller for a Miami-based automobile dealership, where he was employed from September 1990 to December 1993; (4) nearly two years of experience as a field sales manager for the Miami office of St. John's Medical Plan, where he was employed from December 1993 to September 1995; (5) and over seven years of experience as a Medicaid Marketing Representative with the JMH Health Plan, where had been employed from October 1995 to the time of his application. In addition to the Plaintiff's education, work experience, and specialized experience in the managed care field, the Plaintiff also listed that he was fluent in Spanish.

The Plaintiff was not selected for the CAE position. Instead, the Plaintiff was offered the position of Medicaid Outreach and Retention Representative (MORR), which resulted in less pay. The Plaintiff accepted the offer of the MORR position, which he currently holds. In April 2002, Vanessa Reeves, a Black female, was selected for the CAE position.

In Defendant Rogers' deposition and Affidavit, he discussed the reasons for his selection of Vanessa Reeves for the CAE position. According to Defendant Rogers, although the interviews were conducted as a matter of policy, Reeves was the leading candidate from the outset of the selection process. Defendant Rogers asserted that he had knowledge of Reeves' relevant JMH Health Plan experience, and relied on this knowledge during the CAE selection process.

For a time preceding the selection process for the CAE position, Defendant Rogers had allowed Reeves exclusively to act as "lead worker" during open insurance enrollment periods. In addition, Defendant Rogers had appointed Reeves to the position of Acting Sales Manager in 1997, upon the resignation of the previous sales manager. Defendant Rogers had final authority to make this acting appointment and did not formally post the Acting Sales Manager position. Therefore, the acting appointment was never opened to any of the other marketing representatives, including the Plaintiff. Defendant Rogers did not consider anyone other than Reeves for the position of Acting Sales Manager. Reeves held the position of Acting Sales

Manager for nearly five years, until her appointment to the CAE position in April 2002.

Defendant Rogers' previous personnel decisions gave Reeves a decided advantage in applying for the CAE position. Moreover, according to Defendant Rogers, Reeves had a pre-existing advantage over all of the other candidates with respect to five of the eight criteria which he applied in making the selection for the CAE position. Defendant Rogers considered Reeves the most productive salesperson on the staff, and had direct knowledge of her performance at the JMH Health Plan as her supervisor.

Despite Defendant Rogers' view of Reeves as the leading candidate for the CAE position, he denied that she was preselected for the CAE position. Such preselection of a candidate would violate Defendant PHT's personnel policies. Defendant Rogers admitted that Reeves possessed the most experience as to each of the interview criteria, but denied that the interview questions gave Reeves an advantage or were specifically designed with Reeves in mind.

Defendant Rogers ranked the Plaintiff as the third most qualified candidate of all the applicants. Although Defendant Rogers considered the Plaintiff's private sector experience as a controller of an automobile dealership, he did not consider it to be "strong or important." Defendant Rogers also did not give "strong weight" to the fact that the Plaintiff had a college degree in accounting and Reeves did not, because Defendant Rogers did not feel that a degree was relevant to whether the person could perform effectively in a sales position.

Defendant Rogers' interview notes indicate that the Plaintiff had "strong organi-

zational skills." However, Defendant Rogers gave "limited weight" to the fact that the Plaintiff is bilingual and Reeves is not. The ability to communicate in Spanish was not considered by Defendant Rogers to be a significant criteria in the selection process, despite the fact that Reeves would be at "somewhat of a disadvantage" because she could not communicate with some of her potential Spanish-speaking clients in Miami–Dade County.

## B. Anti–Hispanic Comments by Joseph Rogers

The Plaintiff alleges that Defendant Rogers made anti-Hispanic comments several years prior to the Plaintiff's non-selection for the CAE position in April 2002.[2] Although the Plaintiff admitted that he did not personally witness any discriminatory comments made by Defendant Rogers, three other former employees recalled hearing anti-Hispanic comments made by Defendant Rogers.

Melquiades Cardoso is a former JMH Health Plan Marketing Representative who was terminated from his employment by Defendant Rogers in March 1999 for alleged poor job performance and failure to meet assigned sales quotas. Subsequent to his termination, Cardoso filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), as well as a lawsuit alleging that he was terminated due to his Hispanic national origin, in violation of Title VII.

During Cardoso's August 27, 2003 deposition, Cardoso stated that, at some point in time between August and November 1996, he and another Hispanic Marketing Representative, Adrianna Cordoba, were scheduled to attend a presentation at Flor-

---

**2.** Although Defendant Rogers denies making such remarks, this Court takes the Plaintiff's allegations as true for purposes of Defendant PHT's Motion for Summary Judgment.

ida International University ("FIU"). After getting lost on his way to the presentation, Cardoso called Defendant Rogers from a pay telephone to get directions to the FIU campus. When Cardoso told Defendant Rogers that he would be late for the presentation, Defendant Rogers became very angry and began yelling at Cardoso. Defendant Rogers said that he was sick and tired of "dealing with spics" and that Cardoso was ruining the reputation of the JMH Health Plan.

After yelling at Cardoso, Defendant Rogers asked to speak with Cordoba, who was with Cardoso at the time. During the course of their conversation, Rogers called Cordoba a "spic." Although Cardoso did not initially understand the word "spic" to be a slur, Cordoba explained to him that it was a derogatory remark.

Another former employee of PHT, Yamaira Disla, overheard Defendant Rogers discussing the termination of Cardoso, which occurred in March 1999. At that time, Disla was employed as a receptionist for the JMH Health Plan. Disla overheard Defendant Rogers discussing the decision to terminate Cardoso with another employee from the accounting department. During the exchange between Defendant Rogers and the other employee, Disla heard Defendant Rogers state that "we're finally going to get rid of that stupid Latin in marketing." Upon hearing the remark, Disla contacted Cardoso, and learned that he had indeed been recently terminated by Defendant Rogers.

### C. Procedural History

On February 18, 2003, the Plaintiff filed a Charge of Discrimination with the EEOC alleging discrimination based on national origin, in violation of Title VII. In his Charge of Discrimination, the Plaintiff alleged that he had been subjected to discrimination based on his Hispanic national origin when he was not selected for the CAE position in April 2002. The Plaintiff learned of his selection to the MROR position and his non-selection to the CAE position on April 29, 2002.[3] Plaintiff's EEOC Charge was timely filed 294 days after learning of his non-selection to the CAE position.

On March 12, 2003, the EEOC issued a Notice of Right to Sue with respect to the Plaintiff's Title VII claims. On May 16, 2003, and within 90 days of his receipt of the Notice of the Right to Sue, Plaintiff timely filed his First Amended Complaint.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Allen v. Tyson Foods,* 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.* On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence could reasonably sustain a jury

---

3. Although Defendant Rogers made his decision regarding the CAE position on April 19, 2002, the Personnel Action Memorandum regarding the selection of Reeves to the CAE position indicates that the action became effective April 29, 2002.

verdict. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Allen,* 121 F.3d at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough. *Id.; see also Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996) (conclusory allegations and conjecture cannot be the basis for denying summary judgment).

In employment discrimination cases, the plaintiff must first produce sufficient evidence to support a prima facie case. *Chapman v. AI Transport,* 229 F.3d 1012 (11th Cir.2000). A plaintiff may prove discrimination either directly or through circumstantial evidence. *Arrington v. Cobb County,* 139 F.3d 865, 873 (11th Cir.1998). In order to prove a circumstantial case using circumstantial evidence, the plaintiff must first show that he was subjected to less favorable treatment than similarly situated persons outside his protected classification. *See, e.g., Holifield v. Reno,* 115 F.3d 1555 (11th Cir.1997). If a plaintiff establishes a prima facie case, the employer then "must articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Chapman,* 229 F.3d at 1024 (quoting from *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998)). The Court emphasized that "the employer's burden is merely one of production; it need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the defendant articulates a nondiscrimina-

tory reason, the presumption of discrimination created by the prima facie case is eliminated, and the plaintiff must then produce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (quoting from *Combs,* 106 F.3d at 1528). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment." *Id.* The Court emphasized that

> [a] plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.

*Id.* at 1030.

The Court reiterated its previous admonitions that a plaintiff cannot avoid summary judgment merely by questioning the wisdom of an employer's decision: "We are not in the business of adjudging whether employment decisions are prudent or fair." *Id.* at 1030 (quoting from *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999)). Quoting from *Elrod v. Sears Roebuck & Co.,* the Court emphasized:

> Federal courts do not sit as a super-personnel department that re-examines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, [Title VII] does not interfere. Rather, our inquiry is limited

to whether the employer gave an honest explanation for its behavior.

*Id.* at 1030 (citations omitted); *see also Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

It is also important not to confuse "*disagreement* about the wisdom of an employer's reason with *disbelief* about the existence of that reason and its application in the circumstances." *Combs,* 106 F.3d at 1543 (emphasis in original); *see Chapman,* 229 F.3d at 1030. Reasonable people may disagree about whether an employer acted correctly or fairly, "but such potential disagreement does not, without more, create a basis to *disbelieve* an employer's explanation that it in fact based its decision" on its asserted nondiscriminatory reasons. *Id.* (emphasis in original). An employer's decision

> may seem to some to be bad business judgment and to others to be good business judgment, but federal courts do not sit to second-guess the business judgment of employers. Stated somewhat differently, a plaintiff may not establish an employer's proffered reason as pretextual merely by questioning the wisdom of the employer's reason, at least not where...the reason is one that might motivate a reasonable employer.
> *Id.*

### III. *DISCUSSION*

Count 1 of Plaintiff's First Amended Complaint, against Defendant PHT, is an action for discrimination based on his national origin (Hispanic/Cuban). Plaintiff seeks relief based on Defendant PHT's alleged violations of Title VII.

### A. Plaintiff's prima facie case of discrimination

Plaintiff has submitted record evidence to support a prima facie case of discrimination based on circumstantial evidence.[4]

Under the circumstantial evidence standard of *McDonnell Douglas,*[5] in order "to establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." *Denney v. City of Albany,* 247 F.3d 1172, 1183 (11th Cir.2001), quoting from *Combs,* 106 F.3d at 1539 n. 11. *Accord Lee v. GTE Florida, Inc.,* 226 F.3d 1249 (11th cir.2000), *reh'g and reh'g en banc denied, Lee v. GTE Florida, Inc.,* 239 F.3d 371 (11th Cir.2000), *cert. denied; Lee v. GTE Florida, Inc.,* 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001); *Taylor v. Runyon,* 175 F.3d 861, 866 (11th Cir. 1999).

Plaintiff has relied on record evidence to show that (1) he is of Hispanic ancestry; (2) he was qualified for and applied for the CAE position; (3) he was rejected for the CAE position; and (4) that Reeves, who is not Hispanic, was selected to the CAE position.

For purposes of summary judgment, Defendant PHT concedes that Plaintiff has met his burden of establishing a prima facie case of discriminatory failure to promote. Def.'s Reply Mem. in Supp. of Summ. J. at 2. Therefore, the burden

---

**4.** Although Plaintiff has submitted record evidence of derogatory remarks made by Defendant Rogers, Plaintiff does not claim that there is direct evidence of discrimination regarding Defendant PHT's failure to promote him.

**5.** *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

shifts to Defendant PHT to establish a legitimate, nondiscriminatory reason for its failure to promote the Plaintiff to the CAE position.

### B. Defendant's legitimate, nondiscriminatory reason for the challenged employment action

Defendant PHT has submitted valid, nondiscriminatory reasons for its choice of Reeves over Plaintiff. Specifically, Defendant Rogers states in his Affidavit that he considered Reeves the most qualified applicant because: (1) her responses to the questions during the interview were the most impressive; (2) she was the most productive sales person for the JMH Health Plan during the five years immediately preceding the selection process for the CAE position and had received awards for her performance; (3) she had been the Marketing Representative lead worker for several years prior to the selection process for the CAE position; (4) she had served as acting sales manager since 1997; (5) she had worked with brokers selling the JMH Health Plan for several years; (6) she had gained recognition as one of the top Community Health Purchasing Alliance brokers from 1995 to 2000; (7) she had extensive knowledge of the JMH Health Plan's procedures resulting from her 20 years as a PHT employee; and (8) she was a senior member of the department.

The Plaintiff concedes that Defendant PHT has met its burden in establishing a legitimate, nondiscriminatory reason for its failure to promote the plaintiff to the CAE position. Thus, the presumption in favor of Plaintiff vanishes and Plaintiff must show that Defendant PHT's proffered nondiscriminatory reasons for not promoting him were a mere pretext for discrimination.

### C. Plaintiff's Proffer of Evidence Regarding Whether Defendant PHT's Articulated Reasons Are Pretextual

As discussed more fully *infra,* whether or not Plaintiff has shown that Defendant PHT was mistaken in its choice based on his superior educational, language, organizational, managerial and computer qualifications, he must show that Defendant PHT's promotion decision was motivated by national origin, and not by all factors relating to the candidates' respective qualifications. *See Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1339 (11th Cir. 2000). Plaintiff has failed to meet this burden.

### 1. Legal Standard

The Eleventh Circuit explained what a plaintiff must do to prove pretext in connection with a promotion decision in *Lee:*

> In a failure to promote case, a plaintiff cannot prove pretext by simply showing that she was better qualified than the individual who received the position she wanted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by sex. We have explained that a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer. Nevertheless, evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting the plaintiff was pretextual.

226 F.3d at 1253.

When a plaintiff seeks to meet his or her evidentiary burden in proving pretext by showing he or she was substan-

tially more qualified than the person promoted, the disparity in qualifications must be one that "jumps off the page and slap[s][you] in the face," meaning that

> disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. This evidentiary standard does not alter the plaintiff's evidentiary burden to prove the fact of intentional discrimination by a preponderance of the evidence. Instead, the standard only describes the character of this particular type of evidence that will be probative of that ultimate fact.

*Lee,* 226 F.3d at 1253–54 (citations and quotations omitted in part). In *Lee* the court affirmed summary judgment for the employer because the plaintiff failed to establish that "she was more qualified than Hines [the person promoted], let alone so clearly more qualified for the position than Hines that a reasonable juror could infer discriminatory intent from the comparison." *Id.* at 1255. *See also Cofield v. Goldkist,* 267 F.3d 1264, 1268 (11th Cir. 2001).

> The analysis of pretext ... must be focused on the employer's beliefs, and not the employee's own perceptions of her performance. Thus, where the employer has acted based on a belief that the performance of one candidate was superior to the performance of the other, **an employee's assertions of his own superior performance is insufficient to defeat summary judgment in the absence of other evidence.**

*Rogers–Libert v. Miami–Dade County,* 184 F.Supp.2d 1273, 1282 (S.D.Fla.2001) (citations omitted) (emphasis added). *See also, Holifield v. Reno,* 115 F.3d 1555 (11th Cir.1997) ("The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance.")

■ However, "[a] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The propriety of judgment as a matter of law depends on several factors, which include "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.*

■ Plaintiff raises four arguments in support of his contention that he was not selected as CAE based on his national origin. Plaintiff argues that: (1) Defendant Rogers made derogatory comments about other Hispanic employees prior to making the CAE selection; (2) the selection process for the CAE position was highly subjective, with Defendant Rogers exercising virtually unfettered authority; (3) Reeves was pre-selected for the position by Defendant Rogers, despite this being in violation of PHT personnel policies; and (4) Plaintiff's education, work experience, and organizational, managerial, computer and language skills made him arguably more qualified than Reeves for the CAE position.

**2. Defendant Rogers' derogatory comments about Hispanic employees**

Plaintiff has submitted record evidence that Defendant Rogers has used anti-Hispanic slurs and derogatory remarks regarding Plaintiff's former coworkers. Plaintiff argues that the instances of derogatory comments, when taken together

with entire record, show sufficient evidence of pretext so as to make summary judgment inappropriate.

■ When racial remarks are submitted as evidence of pretext, but are not direct evidence of discrimination because they are either too remote in time or too attenuated, they may provide circumstantial evidence that, when read in conjunction with the entire record, show a decisionmakers' discriminatory attitude. *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1291–1292 (11th Cir.1998). However, under the circumstantial evidence standard, without additional persuasive evidence of pretext, a derogatory remark, standing alone, is insufficient to create an issue of fact on pretext. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1230 (11th Cir.2002); *see also Rojas v. Florida*, 285 F.3d 1339, 1343 (11th Cir.2002).

The parties agree that under Eleventh Circuit precedent regarding the circumstantial evidence standard, the Plaintiff must submit record evidence of derogatory remarks *and* additional persuasive evidence of the decision maker's discriminatory attitude in order to create an issue of fact on pretext. However, the parties disagree on the sufficiency of the record evidence in the instant case.

Citing *Ross*, Plaintiff argues that Defendant Rogers' discriminatory remarks, when taken together with his other arguments, might lead a reasonable trier of fact to disbelieve Defendant PHT's proffered reason for its rejection of the Plaintiff as CAE. *See Ross* at 1292.

The Plaintiff has submitted evidence of derogatory remarks that are attenuated, in that they were not directed to the Plaintiff specifically, and removed in time, in that they were uttered more than three years prior to Plaintiff's non-selection to the CAE position. However, even though such remarks are not direct evidence of discrimination, they may contribute to a persuasive circumstantial case showing pretext. Plaintiff asserts that the remarks were made by Defendant Rogers while in a supervisory position. Moreover, the Plaintiff argues that the remarks, when considered with the other evidence, defeat Defendant PHT's offered nondiscriminatory reasons for its failure to promote the Plaintiff.

In accordance with Eleventh Circuit precedent, the Court will discuss Plaintiff's proffered additional evidence in detail.

### 3. Disparity in the Qualifications of Reeves and Plaintiff

Plaintiff seeks to show that he has met his burden by asserting his own superior qualifications in conjunction with submitting other evidence that would show Defendant PHT's proffered nondiscriminatory reasons for promoting Reeves are a pretext for discrimination. Plaintiff argues that he was "arguably more qualified" than Reeves. To support this contention, Plaintiff has shown that he possessed a bachelor of arts degree (which was a preferred qualification during the selection process), whereas Reeves did not. In addition, Plaintiff argues that his fluency in Spanish and advanced organizational, managerial and computer skills make his qualifications superior to those of Reeves. Plaintiff did not submit any evidence showing that his managerial experience or seniority at the JMH Health Plan, or that his reputation in the health plan marketing community, were superior to those of Reeves.

Plaintiff concedes that the argument that he was "arguably more qualified" does not meet the standard of disparity that will "jump off the page and slap[ ] you in the face," as set forth in *Lee*. However, an objective evaluation of the record evidence regarding the disparity of qualifications reflects not only that Plaintiff was not

arguably more qualified but that Reeves was the more qualified applicant.

However, Plaintiff argues that despite not having met the strict standard enunciated in *Lee*, he has met his burden through the submission of other record evidence, including his "arguably" better qualifications.

### 4. Subjective selection criteria as evidence of pretext

Plaintiff argues that the "highly subjective" selection process, which was controlled by Defendant Rogers, is evidence that supports that Defendant PHT's decision was based on national origin.

 "While there is nothing inherently wrong with allowing decision makers to base decisions on subjective criteria, 'subjective evaluations involving white supervisors provide a ready mechanism for ... discrimination.' " *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir.1998) (quoting *Miles v. M.N.C. Corp.*, 750 F.2d 867, 871 (11th Cir.1985)). Criteria should not be "too subjective to allow for any meaningful comparison between [applicants]." *Carter* 132 F.3d at 644. Subjective criteria is subject to this strict scrutiny because it may "tend to facilitate the consideration of impermissible criteria." *Roberts v. Gadsden Memorial Hospital*, 835 F.2d 793, 798 (11th Cir. 1988). In addition, such criteria may "not allow a reasonable opportunity for rebuttal" by the opposing party. *Miles v. M.N.C. Corp.*, 750 F.2d 867, 871 (11th Cir. 1985). The Eleventh Circuit requires that a subjective reason be "capable of objective evaluation" in order to be legitimate. *Conner v. Fort Gordon Bus Co.*, 761 F.2d 1495. 1500 (11th Cir.1985). Specifically,

> A subjective reason can constitute a legally sufficient, legitimate, nondiscriminatory reason under the *McDonnell Douglas/[Texas Dept. of Community Affairs v.] Burdine[*, 450 U.S. 248, 101

S.Ct. 1089, 67 L.Ed.2d 207 (1981)] analysis. Indeed, subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy... Personal qualities ... factor heavily into employment decisions concerning supervisory or professional positions. Traits such as "common sense, good judgment, originality, ambition, loyalty, and tact" often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position...It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation.

*Chapman v. AI Transport*, 229 F.3d 1012, 1033 (11th Cir.2000) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 991, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)) (internal citations omitted). *Accord, Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir.2001) ("[A]n employer's use of subjective factors in making a hiring or promotion decision does not raise a red flag.")

Plaintiff asserts that Defendant Rogers made his decision on a "highly subjective" basis, giving the applicants' performance during the interviews great weight. Plaintiff also asserts that there was "no system for numerically ranking the candidates, no interview panel, and no process to review Mr. Rogers' recommendation before making the final selection." In addition, Plaintiff argues that Defendant Rogers declined to administer standardized performance evaluations for the marketing department employees, even though such evaluations were required by Defendant PHT's personnel policies.

However, Defendant PHT argues that although Defendant Rogers' interpretation of the applicants' performance during the interview was inherently subjective, it was based on specific objective criteria. Defendant Rogers has cited to Reeves' superior knowledge of dealing with commercial brokers and her command of policies regarding uninsured patients as basis for his decision. Moreover, Defendant Rogers' reasons for selecting Reeves as the CAE included objective criteria, such as her long tenure at the JMH Health Plan, her recognition in the health plan marketing community, and her experience as an acting sales manager.

Because the entire record must be reviewed before a determination of sufficiency is made as to pretext, the Court next analyzes Plaintiff's arguments on preselection.

### 5. Preselection as evidence of pretext

Plaintiff asserts that Defendant Rogers' preselection of Reeves is further evidence that Defendant PHT's nondiscriminatory reasons are pretextual.

 "Evidence of preselection operates to discredit the employer's proffered explanation for its employment decision." *Goostree v. State of Tennessee*, 796 F.2d 854, 861 (6th Cir.1986) (internal citations omitted). However, preselection does not necessarily violate Title VII if it is made on the qualifications of the preselected party. *Kennedy v. Landon*, 598 F.2d 337, 341 (4th Cir.1979). Where preselection is based on the decisionmaker's familiarity with the candidates' qualifications and not on a discriminatory motive, preselection is not in violation of Title VII. *See Blue v. Widnall*, 162 F.3d 541, 547 (9th Cir.1998).

Even where preselection would violate personnel policies, such evidence does not rise to the level of discrimination in violation of Title VII. *Kennedy v. Landon*, 598 F.2d at 341.

In the instant case, the parties stipulate that Reeves was the leading candidate at the outset of the selection process. The Plaintiff asserts that Reeves was improperly preselected because of Defendant Rogers' discriminatory attitude toward Hispanic candidates. Because only internal candidates were interviewed for the CAE position, Defendant PHT argues that Defendant Rogers' decision was based on his knowledge of the candidates as either a direct supervisor, as in the case of Reeves, or as the candidates' indirect supervisor, as in the case of the Plaintiff.

Based on the record evidence, the Plaintiff concedes that the preselection of Reeves is "certainly not a 'smoking gun.'"[6] However, Plaintiff asserts that preselection may be legitimate evidence of pretext when viewed in conjunction with the other evidence of pretext. Therefore, an analysis of the record evidence of pretext in its entirety is necessary before determining whether Plaintiff has met his ultimate burden.

### 6. The Sufficiency of the Record Evidence

Defendant PHT argues that the Court must decide whether Plaintiff's evidence, other than the remarks, is sufficient in supporting a finding of pretext, because the remarks alone, without more, are insufficient. *See Scott*, 295 F.3d at 1229. Defendant PHT argues that the other evidence is unpersuasive of pretext. First,

---

**6.** The Court notes that Defendant Rogers ranked Reeves (Black female) as the top candidate; Roberto Maduro (Hispanic male) as the second most qualified candidate; the Plaintiff as the third most qualified candidate; Wessel Peters (non-Hispanic male) as the fourth most qualified candidate; and Glendon Walker (non-Hispanic male) as the fifth most qualified candidate.

Plaintiff has failed to show that he was even "arguably more qualified" than Reeves, much less so much more qualified so that no reasonable person could have chosen Reeves over the Plaintiff. Second, the Plaintiff has not shown that the subjective standards applied during the CAE selection process were in violation of Title VII. Finally, Plaintiff has not shown that the preselection of Reeves was based on a discriminatory motive.

Although this case presents a close legal question, the Court finds Defendant PHT's arguments persuasive. The record evidence submitted by Plaintiff is more akin to that discussed in *Scott* than to that offered in *Ross*. Even applying a more lenient "arguably more qualified" standard to the disparity in qualifications evidence, the Plaintiff has not shown that Defendant PHT based its selective decision on wholly subjective bases not supported by specific facts. *See Chapman*, 229 F.3d at 1035. Even excluding all subjective bases applied by Defendant PHT in the selection of Reeves, the record evidence of objective criteria shows Reeves to be the more qualified candidate for the position of CAE. Moreover, as the Plaintiff himself concedes, there is no "smoking gun" in the record that would show Defendant PHT engaged in preselection of a candidate in violation of Title VII. The record evidence of preselection based on the decision maker's discriminatory attitudes is, at best, neutral.[7] Therefore, the additional evidence of pretext is not persuasive. The circumstantial evidence of a decision maker making anti-Hispanic remarks regarding Plaintiff's coworkers in the past, without more, is insufficient to create an issue as to a material fact on pretext.

7. In addition, Plaintiff does not explain why Reeves was selected over the other non-His-

panic candidates.

### IV. CONCLUSION

Although Plaintiff has established a prima facie case, he has not shown that PHT's proffered nondiscriminatory reasons for not promoting him were a mere pretext for discrimination based on national origin, in violation of Title VII.

For the reasons stated above, Defendant PHT's Motion for Summary Judgment is GRANTED.

### SUMMARY FINAL JUDGMENT AND ORDER OF DISMISSAL

THIS MATTER is before the Court on its concurrently-issued Order on Defendant's, Public Health Trust, Motion for Summary Judgment, as well as the Stipulation for Voluntary Dismissal With Prejudice of Counts II and III of First Amended Complaint [DE # 33], filed on September 24, 2003. For the reasons stated in its concurrently-issued Order, and the Court having reviewed the file and being fully advised in the premises, it is hereby

ORDERED that Summary Final Judgment be and the same is hereby ENTERED in favor of Defendant PUBLIC HEALTH TRUST, and against Plaintiff CARLOS DORREGO. Plaintiff SHALL take nothing by this action and Defendant PUBLIC HEALTH TRUST shall go hence without day. In addition, it is hereby

ORDERED AND ADJUDGED that Counts II and III of the First Amended Complaint are DISMISSED WITH PREJUDICE, including all claims, cross-claims and/or counterclaims relating to those counts, and the parties, Carlos Dorrego and Joseph Rogers, are to bear their own attorney's fees and costs.

All pending motions are DENIED AS MOOT, and this case is CLOSED.