[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-11596
Non-Argument Calendar

_____

D. C. Docket No. 01-02229-CV-RRA-S

FRED TEMPLETON,

Plaintiff-Appellant,

versus

BESSEMER WATER SERVICE,
BESSEMER, CITY OF,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(November 14, 2005)

Before TJOFLAT, BIRCH and DUBINA, Circuit Judges.

PER CURIAM:

Fred Templeton appeals the district court's grant of summary judgment to Bessemer Water Services and the City of Bessemer ("Bessemer") on his age discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34, and his race discrimination claim under 42 U.S.C. § 1983. Templeton argues that the district court erred in determining that (1) he did not present direct evidence of age discrimination; (2) he failed to show that Bessemer's reason for not promoting him—that the other candidates were more qualified—was a pretext for age discrimination; and (3) he did not demonstrate that Bessemer's mayor was a policymaker, a requirement of the § 1983 claim. We AFFIRM the district court's decision as to the age discrimination claim but VACATE as to the race discrimination claim and REMAND for further development.

## I. BACKGROUND

On appeal, Templeton seeks review of the dismissal of his age and race discrimination claims.[1] Templeton alleged that he was denied promotion to a

---

[1] Although the district court "dismisses" Templeton's claims, we note that we are actually reviewing the court's grant of summary judgment, pursuant to the party's post-discovery motion for judgment. As we read the court's orders, we substitute the procedurally correct phrase, "granted summary judgment," when the court used the word, "dismissed."

Further, the race discrimination claim is not before us under Title VII. Templeton failed to seek review by the EEOC on his claim that the employment decision was racially motivated, and therefore his race claim under Title VII was properly dismissed. Nonetheless, the § 1983 claim survives. See Thigpen v. Bibb County, 223 F.3d 1231, 1237–39 (11th Cir. 2000). The § 1983 race discrimination claim is not subjected to the Title VII exhaustion requirement. See

supervisor position within the water department because he was older than the other candidates and because there was a city policy to maintain at least one black supervisor in the department. One position went to Jesse Hinton, who was 12 years younger than Templeton. The other position went to Curtis Parker, who was 12 years younger and black.

Terry Hinton, the superintendent of the water department, interviewed all three men for the two positions. Templeton alleges that the superintendent did not hire him because of his age and his open-heart surgery and because the superintendent believed that Templeton would retire soon. Templeton also alleges that Hinton told him that there was a hiring policy to maintain at least one black supervisor. Bessemer maintains that the reasons that Jesse Hinton and Parker were hired for the supervisor positions were that Hinton was more qualified, more experienced, and had more seniority, and that Parker had more seniority and a better attitude.

The superintendent's recommendations were made to Charles Nevins, the operations manager of Bessemer Water Services, who, in turn, recommended Hinton and Parker to the Mayor. Bessemer admitted that "[t]he final decision was made by [the mayor], the Appointing Authority of the City of Bessemer." R1-42

Hines v. D'Atrois, 531 F.2d 726, 736 (5th Cir. 1976). Templeton has exhausted his administrative remedies with regard to his age discrimination claim.

3

at 1. Nevins stated that the mayor "did not suggest anyone be promoted for any other reason than they were the most qualified for the job." R1-29, Exh. 2 at 2.

In a series of orders, the district court granted summary judgment on the age discrimination claim and then the race discrimination claims. The court granted Bessemer's motion for summary judgment as to the age discrimination claim because there was no direct evidence of discrimination and because Templeton failed to show Bessemer's proffered reason for the hiring decision was pretextual. Subsequently, the court granted summary judgement in favor of Bessemer on the §§ 1981, 1983, and 1985 race discrimination claims. The court noted that Templeton conceded that he had no §§ 1981 and 1985 claims and held that Templeton's § 1983 claim failed because the mayor's role in hiring did not tie him to the discrimination and that Templeton did not show that Bessemer had a policy condoning race discrimination.

## II. DISCUSSION

We review de novo the district court's grant of a motion for summary judgment, viewing all evidence and factual inferences in the light most favorable to the nonmoving party. Gitlitz v. Compagnie Nationale Air France, 129 F.3d 554, 556 (11th Cir. 1997) (per curiam). "Summary judgment is appropriate if the record

4

shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted).

A. Whether There Was Direct Evidence of Age Discrimination

Templeton argues that he presented evidence of statements made by Bessemer employees that constituted direct evidence of age discrimination. Templeton asserts that because there was direct evidence of age discrimination, the district court should not have applied the McDonnell Douglas burden-shifting test. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).

The ADEA states, in relevant part, that "[i]t shall be unlawful for an employer. . . to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's age." 29 U.S.C. § 623(a)(2). A plaintiff may prove a claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or

5

(3) statistical proof.  See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).  "Direct evidence of discrimination is 'evidence which, if believed, would prove the existence of a fact in issue without inference or presumption.'"  Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1105 (11th Cir. 2001) (quoting Earley, 907 F.2d at 1081).  "Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, constitute direct evidence of discrimination."  Earley, 907 F.2d at 1081 (citations and quotations omitted).

We have held that the statement, "what the company needed was aggressive young men . . . to be promoted," did not constitute direct evidence of discrimination, noting that while the statement was "probative circumstantial evidence of [the defendant's] state of mind, the comment still requires us to infer that [the defendant's] interest in promoting young men motivated his decision to terminate [the plaintiff]."  Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1359 (11th Cir. 1999) (emphasis in original).  Furthermore, "Congress made plain that the age statute was not meant to prohibit employment decisions based on factors that sometimes accompany advancing age, such as declining health or diminished vigor and competence."  Young v. Gen. Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (citations omitted and emphasis removed).

6

In this case, appellant claims the following statement is direct evidence of age discrimination: "Mr. Hinton told me that they were wanting—was going to hire a younger person and he didn't feel like I would be coming back to work, because of my heart surgery, you know.  So I assumed that he didn't want to fool with an older person."  R1-29, Exh. 5 at 96.  This statement, as do others similar to it in the record, falls short of the "most blatant remarks" that are necessary to show direct evidence of discrimination.  See Earley, 907 F.2d at 1081.  The context of these comments implicates Congress's concern not to prohibit employment decisions based on legitimate concerns related to the health and vigor of employees.  See Young, 840 F.2d at 829.  We agree with the district court that this statement does not constitute direct evidence of discrimination, but it may be circumstantial evidence of discrimination.  Because these statements are appropriately analyzed as circumstantial evidence, the McDonnell Douglas framework is appropriate.

B. Whether Bessemer's Reasons Were Pretextual

Under the McDonnell Douglas framework, once the prima facie case has been shown,[2] the employer has the opportunity to explain the employment decision

[2] We agree that a prima facie case has been shown, as discussed by the district court.  Templeton is over 40 years of age, and, as discussed in the previous section, there were

7

in nondiscriminatory terms.  Templeton argues that he presented evidence that Bessemer's reasons for promoting the other candidates were pretexts for age discrimination.  He reiterates a number of factual assertions and argues that the nondiscriminatory reasons advanced by Bessemer were subjective and not based on any evidence, and, therefore, could not be used to rebut his prima facie case.

We use the McDonnell Douglas burden-shifting framework in order "to evaluate ADEA claims that are based upon circumstantial evidence of discrimination."  Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  Under this approach, if a plaintiff can establish a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision.  McDonnell Douglas, 411 U.S. at 802, 93 S. Ct. at 1824.  If the employer meets this burden, then the burden shifts back to the plaintiff and merges with the ultimate burden of persuasion, which "remains at all times with the plaintiff," and the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Texas Dep't of

statements that could be viewed by a jury as circumstantial evidence of age discrimination.  Bessemer argued that everyone considered for the position was over 40, so there could be no discrimination, because all the players were within the protected class.  However, discrimination outside of the class of over-40 year-olds is not a requirement under the ADEA, if an older plaintiff is able to show discrimination in favor of someone substantially younger.  Turlington v. Atlanta Gas & Light Co., 135 F.3d 1428, 1432 (11th Cir. 1998).

Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 1093 (1981). A plaintiff can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Id. at 256, 101 S. Ct. at 1095. This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. Jackson v. Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (citation omitted).

Summary judgment is appropriate if the plaintiff fails to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted). "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance." Holifield v. Reno,115 F.3d 1555, 1565 (11th Cir. 1997) (per curiam). This inquiry requires us to, "in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation omitted).

One reason that Bessemer asserted for promoting Hinton and Parker over Templeton was Templeton's documented, poor work attitude. We have held that a subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant "articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman, 229 F.3d at 1034. Terry Hinton testified that Parker's attitude was better that Templeton's attitude "by a long-shot." R1-29, Exh. 4 at 30. This is the kind of subjective statement that needs evidentiary support to be a basis for making an employment decision that will withstand an age discrimination challenge. In support of its judgment about Templeton's attitude, Bessemer offered a warning issued to Templeton based on four customer complaints and a negative performance counseling statement.[3] This documentation is a clear and sufficiently specific factual basis upon which Bessemer could form an opinion regarding Templeton's attitude.

Bessemer offered reasons reaching beyond the subjective for choosing Hinton and Parker over Templeton; Bessemer also argues that the two other candidates were more qualified. Being more qualified for a job is a legitimate,

---

[3] Templeton noted that the complaints were a form of 'shooting the messenger' because they all occurred in conjunction with assignments to terminate water service. Nonetheless, the negative counseling statement, together with these complaints based on customer reaction to the service provided by Templeton, are documentation that Bessemer's management could reasonably use to support its independent subjective belief, formed over the course of Templeton's employment, that Parker's attitude was better than Templeton's.

10

nondiscriminatory reason to promote Hinton and Parker and not Templeton. Templeton, in order to prove that age was the real reason for the employment decision, must rebut Bessemer's legitimate reasoning.

Pretext, however, may not be established simply by showing that the plaintiff is marginally more qualified than other candidates. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1268 (11th Cir. 2001). We have held that "[the plaintiff] must adduce evidence that the disparity in qualifications is so apparent as virtually to jump off the page and slap you in the face." Id. (internal quotations and citations omitted). In analyzing a pretext argument, when the defendant has asserted that an employee is more qualified than the plaintiff, "[t]he relevant inquiry . . . is not to judge which employee was more qualified, but to determine whether any disparity between [their] qualifications is so great that a reasonable fact-finder could infer" that the employer did not believe that the plaintiff was less qualified. Id.

Thus, Templeton's burden is to show that Hinton and Parker are so disparately less qualified than he that age discrimination actually was the reason for Bessemer's employment decision. Regarding Jesse Hinton, the evidence is that Templeton had roughly the same experience and had been employed by Bessemer for half as long. Templeton acknowledged Hinton's qualification for the position in his deposition. In response to a question concerning whether he was

11

more qualified than Terry Hinton, he replied, "Not necessarily—or Buster." R1-29, Exh. 5 at 37. "Buster" is Jesse Hinton. Templeton has failed to show that the facts related to hiring Jesse Hinton warrant a finding of age discrimination.

Regarding Parker, Terry stated that he recommended Parker for promotion over Templeton because Parker had more seniority and because Parker's main experience was with water mains and hydrants and Templeton primarily worked installing water meters. Terry Hinton said that, because their experiences were so similar, it was Parker's better attitude that made the difference. Not only was this subjective conclusion documented, as discussed previously, but we conclude that the evidence does not show Templeton's qualifications were so obviously superior to Parker to warrant a finding that Bessemer's employment decision was tainted with age discrimination.

C. Whether the Mayor Exerted Sufficient Control To Warrant § 1983 Liability

Finally, Templeton argues that the mayor of Bessemer, who ultimately promoted the other candidates, was the policymaker for Bessemer and that, as the policymaker, his decisionmaking violated Templeton's equal protection right not to have race play a factor in employment decisions. Templeton asserts that Parker was hired because of his race. Bessemer argues that race clearly did not play any

12

role, because it hired a white person for another job. We conclude that there is a sufficient question about the mayor's role to remand.[4]

Under 42 U.S.C. § 1983, no person acting under color of state law may deprive another of a constitutional right. Actions by local government "pursuant to an affirmative action plan which does not satisfy strict scrutiny constitute unlawful and unconstitutional discrimination." Bass, 256 F.3d at 1116. However, government entities cannot be held liable under § 1983 on a theory of respondeat superior, but rather may be held liable only for the execution of a governmental policy or custom. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 2036–37 (1978). This liability "may arise with regards to an employment decision . . . provided that the decisionmaker 'possesses final authority to establish . . . policy with respect to the action ordered.'" Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (emphasis removed and citation omitted). "[O]nly those . . . officers who have final policymaking authority may by their actions subject the government to § 1983 liability." Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002) (citation omitted).

---

[4] Whether a particular individual is a final policymaker is a question of law reviewed de novo. Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).

13

A governmental employee is considered a "final policymaker" for official liability purposes "only if his decisions have legal effect without further action by the governing body, and if the governing body lacks the power to reverse the . . . employee's decision." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1292 (11th Cir. 2004) (citation omitted). To determine if someone is a final policymaker, a court must look "not only to 'state and local positive law,' but also to 'custom and usage having the force of law.'" Id. (citation omitted). Thus, if Templeton could prove that there was a plan of affirmative action, that the mayor was the final policymaker, and that the mayor was involved in its implementation, then he will have established the elements of a § 1983 claim.

We start our analysis with the district court's conclusion. "[A]s a matter of law . . . neither the fact that the mayor is chief executive, nor the fact that he approved the recommendations submitted to him, is sufficient to establish that he was personally involved in the alleged discrimination." R1-49 at 2. We disagree on both counts.

First, given the local and state laws cited, we cannot conclude that a mayor is not the ultimate policymaker. The mayor is "the chief executive officer, and shall have general supervision and control of all other officers and the affairs of the city . . . . He shall have the power to appoint all officers." Ala. Code § 11-43-81.

14

Further, "[m]unicipalities which own and operate . . . municipal water systems . . . may, by resolution of the governing body . . . require the mayor to act as superintendent of such system." Ala. Code § 11-43-80(c). We view these code sections as establishing the mayor as the final decisionmaker regarding a broad range of hiring decisions within the city, with municipal water systems as an area of specifically contemplated control. This is precisely the kind of control contemplated in <u>Quinn</u> that would subject the city to § 1983 liability.

Moreover, even if it turns out that the governing body of Bessemer has withheld supervisory control of the water system, this factual omission is not important because the record suggests that the mayor of Bessemer is in <u>de facto</u> control of the water system. Here, the supervisors of the water system submitted their recommendations for supervisory positions to the mayor, and they treated his approval on the matter as final. This is precisely the kind of customary deference to the mayor as the local government policy-setter contemplated by <u>Holloman</u>. Therefore, on both theories of law and custom, we conclude for purposes of subjecting the municipality to § 1983 liability that the Mayor of Bessemer was setting the employment policy.

Second, there is evidence that the water service believed that race was a factor in hiring decisions. The district court believed that "[t]here is no evidence

15

. . . that the mayor did anything other than accept the recommendations submitted to him." R1-49 at 2. This conclusion fails to view the evidence in the light most favorable to the nonmovant.

Two pieces of evidence suggest that race played a factor in Bessemer's hiring decisions. First, Templeton testified that Terry Hinton told him that the racial affirmative action constrained his hiring decision regarding the supervisor's position. Second, the affidavit of Rob Arledge states, "I heard Charles [Nevins] say that a black had to be hired as a [supervisor] pursuant to court order. He said that they had to have a black supervisor at all times."[5] R1-32, Exh. 4 at 1. Because the penultimate decisionmaker felt bound to a policy, there is an inference that the policy was promoted by the ultimate decisionmaker. Thus, the tenuous, but extant, inference is that this policy came from the hiring authority of the water service, that is, from the mayor.

To the extent that the water service had a policy to maintain racial diversity among its supervisors and that the mayor approved candidates in accordance with this policy, the city has exposed itself to § 1983 liability.[6] We disagree with the

_____

[5] Only these first two sentences were admitted by the district court. Neither party appeals this determination of the district court. Issues not raised on appeal are considered abandoned. Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

[6] In fact, in its first order, the district court "concluded that these statements constitute direct evidence of race discrimination." R1-38 at 13.

district court that there is "no evidence" that an unlawful scheme was present.[7]

We, therefore, remand the case for continued proceedings.

### III. CONCLUSION

Fred Templeton failed to present direct evidence of age discrimination and failed to rebut the legitimate employment reason offered by Bessemer for not being promoting him within the water service. Because the mayor of Bessemer, on the facts in the record, has policymaking power over employment decisions within the water service and because there is evidence in the record that suggests the city used race in employment decisions, summary judgment cannot be granted as to the § 1983 claim at this point.

**AFFIRMED in part, VACATED in part, and REMANDED.**

---

[7] There is evidence that the policy came from above Hinton and Nevins, and the mayor was the only hiring authority above those two. See R1-29, Exh. 5 at 24–25; R1-32, Exh. 4 at 1.